**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEROY JOSEY, <br><br> Petitioner, <br><br> v. <br><br> PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et al., <br><br> Respondents. | CIVIL ACTION NO. 1:13-CV-00043 <br><br> (CONNER, C.J.) <br> (MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

On June 16, 2011, the United States District Court for the Eastern District of Pennsylvania received and filed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and dated by the Petitioner on June 13, 2011. (Doc. 1). The petition was subsequently amended by the Petitioner, and then transferred to this Court from the Eastern District. (Doc. 4; Doc. 25). At the time of the filing of his federal habeas petition, the Petitioner was incarcerated at SCI Smithfield, which is located in Huntingdon County, Pennsylvania.

I. **BACKGROUND**

In September 1999, the Petitioner was convicted of rape and sentenced to serve a term of six-and-a-half to twenty years in prison by the Court of Common Pleas of Philadelphia County. In October 2007, the Petitioner was released on parole. In December 2009, the Petitioner's parole was revoked and he was recommitted to a state correctional institution.

On January 5, 2011, the Commonwealth of Pennsylvania Board of Probation and Parole (the "Board") granted parole to the Petitioner, subject to approval of a reentry plan, including a suitable home plan. Additionally, the grant of parole was expressly conditioned upon his not receiving a misconduct charge prior to his release. (Doc. 36-1, at 10). The Petitioner

encountered difficulties in obtaining approval of a suitable home plan (Doc. 9), and thus remained in institutional custody when he filed his federal habeas petition in June 2011. In his petition, the Petitioner challenged his continuing incarceration, arguing that the extensive delay in his release on parole violated his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 1; Doc. 4).

On September 22, 2011, the Petitioner received a misconduct charge for refusing to obey a correctional officer's order. (Doc. 11, at 1). Four days later, on September 26, 2011, he was found guilty of the charged misconduct following an administrative hearing. (Doc. 11, at 2). On October 21, 2011, the Board rescinded its previous grant of parole and scheduled him for reconsideration the next year. (Doc. 36-1, at 14). On November 15, 2012, the Board decided to deny parole to the Petitioner and once again scheduled him for reconsideration the following year. (Doc. 36-1, at 16).

This Court received the case on transfer from the Eastern District on January 7, 2013, after the Third Circuit denied an appeal from the Eastern District's transfer order. (Doc. 25). On January 24, 2013, the Petitioner was granted leave to proceed *in forma pauperis*. (Doc. 29). On February 7, 2013, the Court ordered that the petition be served upon the Respondent, and directed the Respondent to file its answer to the petition on or before February 27, 2013. (Doc. 32). The Respondent subsequently requested an extension of time to respond until March 29, 2013, which the Court granted. (Doc. 34; Doc. 35).

On March 29, 2013, the Respondent filed a document styled "Suggestion of Mootness" but docketed as a motion to dismiss the petition as moot. (Doc. 36). In this motion, the Respondent argues that the petition was rendered moot by the Board's subsequent refusal of parole. The motion also addresses the merits of the Petitioner's claim, arguing that the

2

Petitioner lacks any cognizable liberty interest in an unexecuted grant of parole that would trigger the protections of procedural due process, and thus the petition fails to state a cognizable claim for habeas relief.

The Petitioner has not responded directly to the Respondent's motion to dismiss as moot, but he has filed a number of separate motions seeking preliminary injunctive relief. On May 21, 2013, the Court received and filed a motion by the Petitioner alleging certain mistreatment, harassment, and threats by correctional officers and other inmates, requesting a "stay order" directing that he be transferred to another state or federal facility. (Doc. 37). On July 23, 2013, the Court received and filed a motion by the Petitioner alleging additional threats and harassment by correctional officers and other inmates, again requesting an order directing that he be transferred to another facility. (Doc. 39). On July 24, 2013, the Court received and filed a motion by the Petitioner requesting an order directing that he be produced for a hearing on his petition, which has been disposed of by separate order this same day. (Doc. 40). On July 25, 2013, the Court received and filed a motion by the Petitioner alleging the same facts as the previous two motions for preliminary injunctive relief, requesting an order directing the Petitioner's transfer to a federal correctional facility. (Doc. 41). The Respondent has filed no response to the Petitioner's various motions for injunctive relief.

These matters are now ripe for decision.

## II. DISCUSSION

The injunctive relief sought by Petition in his several motions concerns matters beyond the scope of habeas jurisdiction, and thus it will be recommended that the Petitioner's motions be denied. Despite the Respondent's suggestion to the contrary, the Petitioner's habeas claims do not appear to be moot, but they are without merit. Accordingly, it will be recommended that

the Respondent's motion to dismiss be denied in part and granted in part, and that the petition be denied and dismissed with prejudice on the merits.

### A. MOTIONS FOR INJUNCTIVE RELIEF

"Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner." *Fay v. Noia*, 372 U.S. 391, 430–31 (1963). Thus, "the jurisdiction under the writ [of habeas corpus] is confined to an examination of the record, with a view to determining whether the person restrained of his liberty is detained without authority of law." *Harlan v. McGourin*, 218 U.S. 442, 445 (1918). "Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose.... [I]t cannot be utilized as ... a springboard to adjudicate matters foreign to the question of the legality of custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).

Moreover, "[a] preliminary injunction is an extraordinary remedy, and the party seeking it must show, at a minimum, a likelihood of success on the merits and that they likely face irreparable harm in the absence of the injunction." *Ball v. Famiglio*, 396 Fed. App'x 836, 837 (3d Cir. 2010) (per curiam) (citing *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000)). "As these elements suggest, there must be 'a relationship between the injury claimed in the party's motion and the conduct asserted in the [petition].'" *Ball*, 396 Fed. App'x at 837 (quoting other sources). Thus, "a court may not grant an injunction when the issues raised in the motion are entirely different from those raised in the complaint." *Jones v. Taylor*, No. 3:12cv487, 2013 WL 1899852, at *2 (M.D. Pa. May 7, 2013) (citing *De Beers Consol. Mines v. United States*, 325

U.S. 212, 220–23 (1945)); *see also Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit.") (citing *DeBeers*, 325 U.S. at 220); *Dopp v. Jones*, No. CIV-12-703-HE, 2012 WL 7192503, at *1 (W.D. Okla. Sept. 19, 2012) ("A preliminary injunction involves intermediate relief of the same character as that which may be finally granted.") (citing *DeBeers*, 325 U.S. at 220) (footnote omitted). In sum, a federal habeas court lacks jurisdiction over claims raised in a motion for injunctive relief where those matters unrelated to the underlying habeas petition. *See Jones*, 2013 WL 1899852, at *2; *Dopp*, 2012 WL 7192503, at *1; *Raupp v. Fed. Bureau of Prisons*, No. 06-223, 2006 WL 3332089, at *2 (W.D. Pa. Nov. 16, 2006).

Based on these authorities, it is clear that the Court lacks the authority to grant the Petitioner's requested injunctive relief. The alleged mistreatment, harassment, and threats against the Petitioner are entirely unrelated to his habeas claims, which concern the propriety of his continued confinement after having been granted parole in January 2011. Accordingly, it will be recommended that the Petitioner's motions for injunctive relief (Doc. 37; Doc. 39; Doc. 41) be denied.

### B. Mootness

The Respondent has moved to dismiss the petition on the ground that it is moot. In doing so, the Respondent relies on several prior decisions by federal courts in Pennsylvania finding that subsequent parole refusals render earlier parole decisions moot. (Doc. 36, at 4). In each of these cases, the petitioner raised an *ex post facto* claim challenging multiple parole denials. *See DeFoy v. McCullough*, No. 00-110, 2007 WL 2903922, at *5 (W.D. Pa. Sept. 28, 2007); *Holbrook v. Pennsylvania*, No. 3:CV-05-0529, 2006 WL 398398, at *4 (M.D. Pa. Feb. 16,

5

2006); *Johnson v. Lavan*, No. Civ. A. 04-00860, 2004 WL 1291973, at *4 n.4 (E.D. Pa. June 11, 2004). In each case, challenges to the earlier denials of parole were found to be moot because the remedy for an *ex post facto* violation is a new parole hearing. *See DeFoy*, 2007 WL 2903922, at *5; *Holbrook*, 2006 WL 398398, at *4; *Johnson*, 2004 WL 1291973, at *4 n.4. *See generally Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003) (establishing remedy).

The Petitioner in this case does not raise an *ex post facto* claim, and he does not raise any other procedural defect in the parole hearing process for which the logical remedy would be to grant a new hearing before the Board. Instead, this Petitioner challenges the failure of the Department of Corrections to timely execute the Board's January 2011 grant of parole. Under these circumstances, there is nothing to suggest that the remedies available to a habeas petitioner are limited to an order granting him a new parole hearing. Assuming, *arguendo*, that a Pennsylvania prisoner has a cognizable right to timely release from confinement once parole has been granted, and recognizing that a hearing had already been held in this case and the prisoner granted parole, then the proper remedy likely would be a writ of habeas corpus ordering the prisoner's immediate release. *See McQuillion v. Duncan*, 342 F.3d 1012, 1015 (9th Cir. 2003) (immediate release was the proper remedy for a habeas petitioner challenging a parole board decision to rescind a prior grant of parole). *See generally Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release.").

As such, the cases cited in support of the Respondent's mootness argument are inapposite. The Petitioner's claims have not been rendered moot by the subsequent decision of the Board to rescind its prior unexecuted grant of parole, nor by subsequent decisions denying parole.

### C. THE PETITIONER'S CONSTITUTIONAL CLAIMS

#### 1. Eighth Amendment Claim

The Petitioner generally asserts that his continued detention following the January 2011 grant of parole constitutes cruel and unusual punishment, prohibited by the Eighth Amendment of the United States Constitution. However, the mere failure to allow the Petitioner to be released on parole before his maximum sentence expires in 2019 does not state a valid Eighth Amendment claim. *See Sharard v. Berks County*, No. 1:CV-12-2393, 2012 WL 6838952, at *8 (M.D. Pa. Dec. 6, 2012) (citing *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989)); *Corliss v. Pa. Bd. of Prob. & Parole*, No. 4:CV-05-1817, 2006 WL 2927270, at *5 (M.D. Pa. Oct. 11, 2006) ("[I]nmates have no right to be released before the expiration of a valid prison sentence, and serving some or all of a valid prison sentence in prison does not constitute cruel and unusual punishment.").

#### 2. Equal Protection Claim

The Petitioner generally asserts that his continued detention following the January 2011 grant of parole violated his right to equal protection. He does not, however, set forth any specific details with respect to how he has been denied equal protection of the law. To prevail on an equal protection claim, the Petitioner must demonstrate that he was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423–24 (3d Cir. 2000). Mere conclusory allegations will not suffice. *See Blanchard v. Gallick*, 448 Fed. App'x 173, 176 (3d Cir. 2011).

### 3. Due Process Claim

Finally, the Petitioner asserts that his continued detention following the January 2011 grant of parole violated his due process rights.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004). In this case, the Petitioner claims a liberty interest in parole, of which he allegedly was denied without due process of law when parole officials delayed his release after the Board decided to grant him parole – a grant of parole which ultimately was rescinded by the Board ten months later.

It is well settled that the United States Constitution does not create a protected liberty interest in a pre-release expectation of parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 10–11 (1979); *Jago v. Van Curen*, 454 U.S. 14, 21 (1981); *Stephens v. Chairman of the Pa. Bd. of Prob. & Parole*, 173 Fed. App'x 963, 965–66 (3d Cir. 2006) (per curiam); *Wolfe*, 334 F. Supp. 2d at 773. It is true that a "parolee" possesses a vested liberty interest in his continued release on parole that cannot be taken away without affording the parolee certain minimum requirements of due process. *See Morrissey v. Brewer*, 408 U.S. 471, 482, 488–89 (1972). But the mere grant of parole by a state parole board does not vest a prisoner with a protected liberty interest. *Jago*, 454 U.S. at 21; *Boone v. Nose*, No. 2:12-CV-1370, 2013 WL 819730, at *5 (W.D. Pa. Mar. 5, 2013); *Bryant v. Thomas*, No. 07-CV-811, 2007 WL 1650532, at *2 (E.D. Pa. May 8, 2007); *DiSabatino v. Pa. Bd. of Prob. & Parole*, No. 05-CV-5662, 2006 WL

1308236, at *3 (E.D. Pa. May 10, 2006). Under Pennsylvania law, a prisoner does not attain the status of a "parolee" until the grant of parole is executed and the prisoner is actually released on parole. *Stephens*, 173 Fed App'x at 965; *Boone*, 2013 WL 819730, at *5–*6; *Bryant*, 2007 WL 1650532, at *2; *DiSabatino*, 2006 WL 1308236, at *3. Until that time, an unexecuted grant of parole may be rescinded by the Board without implicating procedural due process. *Stephens*, 173 Fed App'x at 966; *Boone*, 2013 WL 819730, at *5–*6; *Bryant*, 2007 WL 1650532, at *2; *DiSabatino*, 2006 WL 1308236, at *3. A mere delay in the processing of parole is not a deprivation of procedural due process. *See Latshaw v. Pa. Bd. of Prob. & Parole*, No. 4:09-CV-2541, 2010 WL 1780018, at *5–*6 (M.D. Pa. Apr. 27, 2010). Absent a protected liberty interest, the petition fails to state a cognizable procedural due process claim. *See Mudric*, 469 F.3d at 98; *Wolfe*, 334 F. Supp. 2d at 773.

Even in the absence of a protected liberty interest, substantive due process forbids "totally arbitrary parole decisions founded on impermissible criteria," such as race or in retaliation for exercising constitutional rights. *Burkett v. Love*, 89 F.3d 135, 139–40 (3d Cir. 1996) (quoting *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely."). The Petitioner has not alleged reliance by parole officials upon impermissible criteria such as race or retaliation for the exercise of constitutional rights,[1] but only that their failure to approve a suitable home plan – a necessary prerequisite to his actual release on parole – was arbitrary insofar as it was based on

---

[1] The Petitioner's mental health status is not an impermissible criteria. *See Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 527 (E.D. Pa. 2001) (citing *Stern v. Halligan*, 158 F.3d 729, 731 (3d Cir. 1988)).

an erroneous determination of the proximity between the home where the Petitioner's mother lived and a community recreation center, as to which the Petitioner's prospective home plan was required to meet certain minimum distances due to his status as a convicted sex offender. "The relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" *Hunterson v. DiSabato*, 308 F.3d 236, 246–47 (3d Cir. 2002). In this case, parole officials found his home plan to be unsuitable because his mother's home was located too close to a community recreation center. Although the Petitioner disputes this factual determination, Pennsylvania law grants parole officials a large measure of discretion in determining the suitability of a prospective parolee's home plan. *See Williams v. DiGuglielmo*, No. 2:05cv3440, 2006 WL 1531641, at *6 (E.D. Pa. Feb. 28, 2006) (approval of home plan within sole discretion of parole board); *Barge v. Pa. Bd. of Prob. & Parole*, 39 A.3d 530, 548 (Pa. Commw. Ct. 2012) ("[T]here is no legal authority requiring the Board to approve home plans that are near schools, children's dwellings or children's play areas."); *Nieves v. Pa. Bd. of Prob. & Parole*, 995 A.2d 412, 419 (Pa. Commw. Ct. 2010) (parole board has no duty to approve home plan without restriction as to location of residence); *see also* 37 Pa. Code § 63.1(d) ("The date of parole may be postponed until a satisfactory plan is arranged for the parolee and approved by the Board"). Further, there is nothing to suggest that the determination by parole officials that the home of the Petitioner's mother is too close to a community recreation center constituted an unreasonable exercise of their discretion. For these reasons, the petition fails to state a cognizable substantive due process claim.

## III. Recommendation

Based on the foregoing, it is recommended that the Petition

1. The Petitioner's various motions for injunctive relief (Doc. 37; Doc. 39; Doc. 41) be **DENIED**;

2. The Respondent's motion to dismiss (Doc. 36) be **DENIED in part** and **GRANTED in part**; and

3. The Petition (Doc. 1; Doc. 4) be **DENIED** and **DISMISSED WITH PREJUDICE** on the merits.

It is further recommended that the Court decline to issue a certificate of appealability, as the Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

BY THE COURT:

**Dated: December 18, 2013**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEROY JOSEY,<br><br>    Petitioner,<br><br>v.<br><br>PENNSYLVANIA BOARD OF<br>PROBATION AND PAROLE, et al.,<br><br>    Respondents. | CIVIL ACTION NO. 1:13-CV-00043<br><br>(CONNER, C.J.)<br>(MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 18, 2013**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: December 18, 2013              *s/ Karoline Mehalchick*
                                   **KAROLINE MEHALCHICK**
                                   **United States Magistrate Judge**